UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　　Plaintiff,<br><br>JOHN FENCL,<br><br>　　　　　　　　　　　Defendant. | Case No.: 21-CR-3101-JLS-WVG<br><br>**ORDER DENYING DEFENDANT'S MOTION TO AMEND CONDITIONS OF PRETRIAL RELEASE** |

## I.  INTRODUCTION

Before the court is Defendant's Motion to Amend Conditions of Pretrial Release. ECF No. 66. Defendant argues that Standard Condition (4) should be removed as a condition of his pre-trial release. Defendant works as a truck mechanic, which requires him to travel to less-populated areas at all times of the day and night, so he desires a firearm for protection. He argues that under *New York State & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022) any restriction on possessing firearms is unconstitutional unless the Government can demonstrate that the restriction is analogous to one that existed around the time of the Nation's founding. Defendant further contends that the Government cannot show a historical tradition of restricting firearm possession by individuals under supervision because of pending criminal charges. Defendant argues that early forms of pre-trial release focused on the posting of money or property as the sole condition for release.

Restrictions on firearms possession as a condition of pretrial release were not enacted until the passage of the 1984 Bail Reform Act. Because firearm restrictions were not historically conditions of bail before or around the time the Second Amendment was passed, Defendant argues that any attempt to restrict his pre-trial access to firearms is unconstitutional.

The Government opposes the motion, arguing that when a person is charged with a crime, "certain rights must give way to reasonable restrictions in order to protect the safety of others ensure compliance with release conditions." ECF No. 69. The Government contends that if the Court has the power to deny pre-trial release and detain the defendant, which would deny the defendant access to a firearm altogether, then it must also have the lesser power to release him subject to certain conditions, like a firearm restriction. Additionally, the Government explains that the *Bruen* finding focused on the rights of "law-abiding citizens" to possess firearms for self-defense. The Government argues that here, as a person who has been charged with a crime based on a finding of probable cause, Mr. Fencl would not be considered a "law-abiding citizen," which would place him outside the plain text of the Second Amendment.

## II. THE SUPREME COURT'S DECISION IN *BRUEN* DOES NOT RENDER STANDARD CONDITION (4) UNCONSTITUTIONAL.

### A. Rule Under *Bruen*

In *Bruen*, the Supreme Court considered whether a New York licensing regime comported with the right to carry handguns publicly for self-defense under the Second and Fourteenth Amendments. *New York State Rifle and Pistol Association v. Bruen*, 142 S. Ct. 2111, 2122 (2022). New York's regulation required applicants to show a special need for self-protection in order to obtain a concealed carry firearm license. *Id.* The Court found this "proper cause" standard violated the rights of an individual to keep and bear arms for self-defense under the Second Amendment. *Id.* at 2126. It held that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* To justify a regulation, "the government must demonstrate that

the regulation is consistent with this Nation's historical transition of firearm regulation." *Id.*

Consequently, the Court in *Bruen* altered the framework for Second Amendment analysis—the government may not lean on a regulation's promotion of an important interest. *See id*. The Court confirmed its holding in *District of Columbia v. Heller*, 554 U.S. 570 (2008) in which it held that the plain text of the Second Amendment covers an individual's right to keep and bear arms for self-defense. *Id*. But it declined to adopt the two-step approach commonly used by Courts of Appeal following *Heller*. *Id.* The first step of that test involves historical analysis which the Court determined is consistent with *Heller's* focus on constitutional text and history. *Id.* at 2117-18. The second step in that test, however, invokes a balancing of governmental interest with the constitutional right. *Id.* at 2118. *Bruen* rejected this means-end scrutiny as "one step too many." *Id.*

The Court employed two metrics to analyze whether a regulation is relevantly similar to an analogous historical tradition of firearm regulation: "how and why" it burdens "a law-abiding citizen's right to armed self-defense." *Id.* at 2133. As discussed below, the use of the category of "law-abiding" persons is repeated throughout the opinion. *See, e.g.*, *id*. at 2122. This analogical reasoning does not require the government to identify a "historical twin." *Id.* at 2133. Rather, the measure is "a well-established and representative historical *analogue.*" *Id.* Applying this analysis to New York's proper-cause requirement, the Court found that the historical record did not provide an adequate analogue to support the regulation. *Id.* at 2138.

### B. Defendant's Conduct Does Not Fall Within the Plain Text of the Second Amendment Because He is Not a Law-Abiding Citizen.

The Supreme Court has recognized that "the Second Amendment . . . protect[s] the right of an ordinary, law-abiding citizen." *Bruen* at 2122 (citing *Heller,* 554 U.S. 570 (2008) and *McDonald v. Chicago,* 561 U.S. 742 (2010).

As Defendant suggests, *Bruen* altered the framework for contesting the constitutionality of firearm regulations. *See Bruen,* 142 S. Ct. at 2126. However, the Court

in *Bruen* was concerned with the rights of "law-abiding" citizens to possess firearms for self-defense. *Id.* at 2156. Throughout its opinion, the Court repeatedly referred to this category of law-abiding persons. This distinction between law-abiding citizens and non-law-abiding, also reflected in the dicta and *Heller* and *McDonald*, clarifies the scope of the Second Amendment's plain text. The district court in *United States v. Ingram*, a post-*Bruen* challenge to a felon-in-possession statute, found that this distinction, together with the *Bruen* Court's focus on the rights of "law-abiding citizens" would support a finding that such statutes comport with Second Amendment rights. *United States v. Ingram*, No. 0:18-557-MGL-3, 2022 WL 369135- (D.S.C. Sug. 25, 2022) at 3. *See also United States v. Nutter*, No. 2:21-cr-00142, 2022 WL 3718518 at 4 (upholding a regulation prohibiting people convicted of domestic violence offenses from possessing firearms).

Further, the Court limits the framework established in *Bruen* to when an individual's conduct falls within the plain text of the Second Amendment. *Bruen*, 142 S.Ct. at 2126. Defendant does not qualify as a "law-abiding" person protected by the Second Amendment. As an individual charged with a crime based on a finding of probable cause, Defendant is subject to significant but temporary restrictions on his constitutional rights. *See United States v. Perez-Garcia,* 22-CR1581-GPC, Dkt. 41, "Order Denying Defendant's Motion to Amend Conditions of Release." Therefore, because Defendant is not within the plain text of the Second Amendment, his Standard Condition (4) complaint should be governed by a different analysis.

The Court has repeatedly held that the Government's interest in community safety can outweigh the liberty interest of an individual person. *United States v. Salerno*, 481 U.S. 739, 748 (1987). In *Salerno*, the Court held that regulatory interest in public safety justified the substantial liberty restrictions that accompany pretrial detention. While liberty is the "norm" in our society, limited exceptions made pursuant to the government's primary concern of its' citizens' safety exist. *Id.* at 755. Detention and other restrictions on pretrial release liberty are necessary regulatory measures. *Id*. at 748. Such measures are constitutional and comport with the presumption of innocence. *Id.* Defendant's restricted

ability to possess firearms while awaiting trial reflects the necessary and routinely imposed liberty restrictions that persons with criminal charges face. If, as an individual charged with a crime, Defendant can be lawfully subjected to restrictions of his liberty including possible detention, it logically follows that he can be subject to a lesser restriction of a restraint on firearms possession.

### C. Even if Defendant is a Law-Abiding Citizen, There is Historical Precedent That Standard Condition (4) is Constitutional Under the *Bruen* framework.

Defendant reminds this Court that he, as the accused, is subject to a powerful presumption of innocence, so even with a probable cause finding, this Court must presume him not guilty of the acts charged. Consequently, Defendant argues, the Court must presume that he is "law-abiding" and thus subject to the rule in *Bruen*.

As previously stated, to restrict firearms possession under *Bruen*, "the government must demonstrate that the regulation is consistent with this Nation's historical transition of firearm regulation." *Bruen*, 142 S. Ct. at 2126. As Defendant correctly states, the regulation in question came about with the passage of 1984 Bail Reform Act, fewer than 40 years ago. However, the analysis under *Bruen* does not require a "historical twin," but rather a historical analogue. *Id.* at 2132. This analogical reasoning requires "a determination of whether the two regulations are relevantly similar." *Id.* Under this framework, surety statutes provide a relevantly similar historical analogue.

In the mid-1800s, several jurisdictions enacted surety statues, which required people who were "reasonably likely to 'breach the peace'" to post a bond before they were allowed to publicly carry a firearm. *Id.* at 2148. These statutes are "relevantly similar" to Standard Condition (4) for two reasons. First, both surety statutes and pretrial release restrictions operate to restrict a discrete group of people and not the public generally. *United States v. Perez-Garcia,* 22-CR1581-GPC, Dkt. 41, "Order Denying Defendant's Motion to Amend Conditions of Release." Surety statutes only restricted the public carry of firearms for people who were reasonably likely to breach the peace, and Standard Condition (4) restricts

the possession and use of firearms for people who have been charged with a crime after a finding of probable cause. Second, both restrictions exist for the purpose of public safety. *Id.* Surety statutes were enacted to maintain the peace in public settings. Standard Condition (4) has similar goals, while also providing for the more specific safety of the officers responsible for pre-trial supervision.

Defendant cites a Texas district court case that finds that surety statutes are not a reasonable analogue. *United States v. Quiroz*, 22-CR-00104-DC (W.D. Tex., Sept. 19, 2022) (Doc. 82). In *Quiroz*, the court stated that surety statutes were "not meant as any degree of punishment" and that surety statutes were not a total restriction like Standard Condition (4), but rather a restriction that could be overridden by posting a bond. *Id.* First, the reliance on punishment is misplaced—Standard Condition (4) is not a punishment, but a measure for public safety, like the surety statutes were. Second, while Standard Condition (4) may restrict firearms possession by a greater degree than surety statutes did, under *Bruen*, the two restrictions are still relevantly similar, even though not historical twins. Both enact a firearms regulation on a discrete and distinct category of people in the interest of public safety, a type of regulation which has been a historical tradition of this Nation since its founding. *See United States v. Perez-Garcia,* 22-CR1581-GPC, Dkt. 41, "Order Denying Defendant's Motion to Amend Conditions of Release." Because Standard Condition (4) has a relevantly similar historical analogue, it is constitutional under a *Bruen* analysis.

### III. CONCLUSION

This Court finds compelling the reasoning of Magistrate Judge Goddard in *United States v. Perez-Garcia*, 22-CR-1581-GPC and adopts it. *Bruen* does not render Standard Condition (4) unconstitutional and Defendant's Motion to Modify the Conditions of Release and return of his firearms is **DENIED**.

**IT IS SO ORDERED.**

1  Dated: October 18, 2022

Hon. William V. Gallo
United States Magistrate Judge