UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                          Plaintiff,<br><br>v.<br><br>JOHN FENCL,<br><br>                         Defendant. | Case No.: 21-CR-3101 JLS<br><br>**ORDER AFFIRMING MAGISTRATE JUDGE'S ORDER DENYING MOTION TO AMEND CONDITIONS OF PRETRIAL RELEASE**<br><br>(ECF No. 73) |

Presently before the Court is Defendant John Fencl's Motion for Review of Magistrate Judge's Order Denying Motion to Amend Conditions of Pretrial Release ("Mot.," ECF No. 73). The Government filed a Response in Opposition ("Opp'n," ECF No. 79) and Defendant submitted a Reply in Support ("Reply," ECF No. 80) thereof. Having considered the Parties' arguments and the law, the Court will **AFFIRM** the Magistrate Judge's Order.

## BACKGROUND

In September 2019, officers arrested Defendant for illegally possessing a concealed gun without a license. ECF No. 1 at 3. He pled guilty to a misdemeanor firearm offense and was sentenced to two years of probation, which included a firearms possession prohibition as well as a Fourth Amendment Waiver. *Id.* In June 2021, detectives with the

El Cajon Police Department conducted a search of Defendant's residence pursuant to the Fourth Amendment Waiver. *Id.* During the search, detectives located more than one hundred firearms, including 10 ghost guns, four silencers, three short-barreled rifles, and 21 other guns that are illegal under state law. ECF No. 57-4 at 4. Defendant was ultimately charged with illegally possessing three unlicensed short-barreled rifles and four unlicensed silencers in violation of 26 U.S.C. §§ 5861(d), 5871. ECF No. 53. Following a hearing, Magistrate Judge William Gallo ordered Defendant's release on bond, subject to various conditions. ECF No. 12. One of those conditions was Standard Condition 4, which bars him from possessing or attempting to possess a firearm, destructive device, or other dangerous weapon and ordered him to legally transfer all firearms as directed by Pretrial Services. *Id.* Magistrate Judge Gallo amended the condition to also prohibit Defendant from possessing any gun parts. *See id.*

Defendant filed a motion to modify his conditions of pretrial release to remove Standard Condition 4. *See generally* ECF No. 64. Defendant argued that under the Supreme Court's recent decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), Standard Condition 4 violates the Second Amendment, as there is no historical tradition of restricting firearm possession by individuals under supervision as a result of pending criminal charges. *Id.* at 3–10. Magistrate Judge Gallo disagreed, ultimately concluding that Defendant's conduct placed him outside the scope of the Second Amendment because he is not a law-abiding citizen, ECF No. 72 at 3–5, and in the alternative, even if Defendant were considered a law-abiding citizen, there is an historical tradition of restricting firearm possession by individuals under supervision because of pending criminal charges, *id.* at 5–6. Namely, surety statutes from the mid-19th century required people who were "reasonably likely to 'breach the peace'" to post a bond before they were allowed to publicly carry a firearm. *Id.* Defendant has appealed that decision, arguing that the protections of the Second Amendment are not limited to law-abiding citizens, and that surety statutes do not justify Standard Condition 4. *See generally* Mot.

## DISCUSSION

The Bail Reform Act of 1984, 18 U.S.C. §3141 et seq., "authorized judicial officers to release pretrial detainees subject to conditions determined to be reasonably necessary to assure the defendant's future appearances or the safety of individuals or the community." *United States v. Slye*, No. 1:22-MJ-144, 2022 WL 9728732, at *3 (W.D. Pa. Oct. 6, 2022). One such condition is the prohibition on the possession of a "firearm, destructive device, or other dangerous weapon." 18 U.S.C. § 3142(c)(B)(viii). Standard Condition 4 is authorized by this statute. The condition is not mandatory and may only be imposed "after an individualized consideration of that defendant's circumstances." *United States v. Perez-Garcia*, No. 3:22-CR-01581-GPC, 2022 WL 4351967, at *4 (S.D. Cal. Sept. 18, 2022).

The Court finds that Standard Condition 4 and the statute authorizing its imposition, 18 U.S.C. § 3142(c)(B)(viii), do not violate the Second Amendment. First, Standard Condition 4 regulates conduct falling outside the scope of the Second Amendment. In *District of Columbia v. Heller*, 554 U.S. 570, 573–627 (2008), *McDonald v. Chicago*, 561 U.S. 742, 767–778 (2010), and *Bruen*, 142 S. Ct. at 2122, 2134–56, the Supreme Court recognized that the Second and Fourteenth Amendments protect the right of responsible, law-abiding citizens to possess a firearm inside and outside the home for self-defense and other lawful purposes. By definition, Defendant falls outside the scope of these protections as he has been charged with unlawful possession of firearms based on a finding of probable cause. *See generally* ECF No. 1; *see also Perez-Garcia*, 2022 WL 4351967, at *6 ("As a person who has been charged with a crime based on a finding of probable cause, [defendant] would not be considered a 'law-abiding' or responsible citizen, so he is outside the plain text of the Second Amendment."). Defendant argues that he must be treated as a law-abiding citizen, as he has not yet been convicted of a crime and is entitled to a presumption of innocence. *See* Mot. at 7. A presumption of innocence, however, does not deprive the Government of the ability to place significant, but temporary, restrictions on an accused's constitutional rights in order to further its interest in community safety. *Perez-Garcia*, 2022 WL 4351967, at *6 (collecting cases supporting the proposition that

"[p]ersons with criminal charges pending are routinely subject to significant restrictions on their constitutional rights once probable cause has been shown"); *cf. United States v. Salerno*, 481 U.S. 739, 748 (1987) ("We have repeatedly held that the Government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest."). Standard Condition 4 is one such restriction.

Second, even if the Court were to categorize Defendant as a law-abiding citizen, Standard Condition 4 is consistent with this country's historical tradition of firearm regulation. In *Bruen*, the Supreme Court held that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. *See* 142 S. Ct. at 2126. To justify the regulation, the Government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. *Id.* The Supreme Court made clear, however, that the government need only identify "a well-established and representative historical *analogue*, not a historical *twin*." *Id.* at 2133. So long as the historical analogue regulated a law-abiding citizen's right to armed self-defense in a comparable manner and for comparable purposes, it will not run afoul of the Second Amendment. *See id.* In other words, Courts should look to "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.*

As noted by the Supreme Court in *Bruen*, in the mid-19th century, many jurisdictions began adopting surety statutes that required certain individuals who were "reasonably likely to 'breach the peace'" to post bond before carrying weapons in public. *Id.* at 2148–2150. Thus, surety statutes and Standard Condition 4 serve the same purpose: public safety. Neither prohibition is meant as a form of punishment. *See id.* at 2149 ("[S]urety laws were 'intended merely for prevention' and were 'not meant as any degree of punishment.'" (quoting 4 W. Blackstone, Commentaries on the Laws of England 249 (1769))); *Salerno*, 481 U.S. at 747 (1987) ("The Legislative History of the Bail Reform Act clearly indicates that Congress did not formulate the pretrial detention provisions as punishment for dangerous individuals."). Moreover, they further this purpose in the same manner: temporarily burdening the Second Amendment rights of individuals reasonably

likely to breach the peace. Accordingly, Standard Condition 4 is consistent with our historical tradition of firearms restrictions.

The Court acknowledges that surety statutes were not enacted until several decades after the adoption of the Second Amendment and thus "do not provide as much insight into [the Second Amendment's] original meaning as earlier sources." *See Heller*, 554 U.S. at 614 (2008). Earlier American history, however, further confirms the Governments ability to place temporary restrictions on the Second Amendment rights of individuals under supervision as a result of pending criminal charges. As the United States District Court for the Western District of Pennsylvania recently noted:

> [P]retrial detention and its attendant restrictions on constitutional rights have existed since the early days of the Republic. . . . Inherent in this severe restriction of liberty is the temporary abridgement of numerous core constitutional rights including, but not limited to, freedom of speech (to the degree that such speech could undermine order and security in the prison), freedom of association, reasonable expectations of privacy, and, apropos to the instant case, the right to bear arms. It would be illogical to conclude that the Court has the authority to set conditions temporarily depriving an accused of all of the aforementioned constitutional protections by ordering his detention but lacks the authority to impose far less severe restrictions, such as ordering his release on bond with a firearms restriction.

*United States v. Slye*, No. 1:22-MJ-144, 2022 WL 9728732, at *2 (W.D. Pa. Oct. 6, 2022). The Supreme Court in *United States v. Salerno* confirmed this longstanding history by finding that pretrial detention on the basis of future dangerousness is constitutional. 481 U.S. at 755.

Defendant argues that "the mere existence of pretrial detention cannot be used to justify stripping a defendant of his rights altogether." Reply at 3. This hyperbole misses the point. Under *Bruen*, the Government bears the burden of demonstrating an historical tradition of firearms prohibitions analogous to the challenged regulation. The Court finds that the Government has met this burden by highlighting this Nation's historical tradition

of pretrial detention (and its attendant restrictions on an individual's Second Amendment rights) and surety statutes. Defendant also goes to great lengths to demonstrate that the imposition of Standard Condition 4 was not based on an individualized assessment of Defendant's circumstances. Reply at 3–5. Several facts, however, demonstrate that Standard Condition 4 is tailored to Defendant's circumstances. Defendant is facing seven counts of firearms violations, ECF No. 53; Defendant has been arrested on firearms-related charges on three occasions, ECF No. 1 at 3; and Magistrate Judge Gallo personally amended the Pretrial Release Order to ensure that Defendant could not possess gun parts, ECF No. 12, presumably in light of Defendant's post-*Miranda* statement that he manufactured several of the seized firearms, ECF No. 1 at 3–4. Moreover, as other courts have recognized, the "condition prohibiting possession of firearms is recognized as necessary and appropriate in many cases for the protection of persons, including Pretrial Services Officers responsible for supervising pretrial releasees." *Slye*, 2022 WL 9728732, at *3. There is no reason to believe that is not also the case here.

## CONCLUSION

As Justice Kavanaugh noted in his concurring opinion in *Bruen*, the Second Amendment, properly interpreted, allows a variety of gun regulations. *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring). This Court finds that when properly interpreted, the Second Amendment permits the restriction of firearm possession by individuals under supervision as a result of pending criminal charges. Accordingly, the Court **AFFIRMS** Magistrate Judge Gallo's Order.

IT IS FURTHER ORDERED that the Motion Hearing re: Defendant's appeal of the Magistrate Judge decision set for December 9, 2023 is **VACATED**.

**IT IS SO ORDERED.**

Dated: December 7, 2022

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge